UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

NOV 10 2010

CHRIS R. JOHNSON, CLERK
BY _____ DEPUTY CLERK

BANK OF AMERICA, N.A., )
　)
　　Plaintiff, )
　)
v. ) Case No.: 10-5220
　) Judge
JB HANNA, LLC, KERZEN PROPERTIES, ) Magistrate Judge
LLC, BURT HANNA and HANNA'S )
CANDLE COMPANY, )
　)
　　Defendants. )

## COMPLAINT

Bank of America, N.A., by and through its undersigned counsel, hereby complains of defendants as follows:

### PARTIES

1. Plaintiff Bank of America, N.A. ("Bank of America"), is a national banking association with its main offices located in North Carolina.

2. Defendant JB Hanna, LLC ("JB") is an Arkansas limited liability company with its main office located in Arkansas. JB is comprised of the following members: (a) Burt Hanna ("Hanna"), an individual and a citizen of the state of Arkansas, (b) the Brook Gabrielle Hanna Trust, and (c) the Jake Mason Hanna Trust. Hanna is the trustee of the Brook Gabrielle Hanna Trust and the Jake Mason Hanna Trust. Thus, JB is a citizen of Arkansas.

3. Defendant Kerzen Properties, LLC ("Kerzen") is an Arkansas limited liability company. Kerzen's sole member is Hanna. Thus, Kerzen is a citizen of Arkansas.

4. Defendant Hanna is an individual and a citizen of the state of Arkansas.

5.      Defendant Hanna's Candle Company ("HCC") is an Arkansas corporation with its main office located in Arkansas.

## VENUE AND JURISDICTION

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## INTRODUCTION

8.      In this action, Bank of America seeks to enforce its rights and remedies with respect to (a) certain business loans made to JB with outstanding principal balances of $1,145,748.01 and $7,401,003.83, respectively, (b) a certain business loan made to Kerzen with an outstanding principal balance of $1,914,705.30, and (c) guarantees that Hanna and HCC made with respect to those loans. Specifically, Bank of America seeks, among other things: (i) entry of judgment in its favor for the outstanding amounts due, (ii) appointment of a temporary, and in due course permanent, receiver, (iii) to foreclose on certain of its collateral, and (iv) to compel JB and Kerzen to turnover such collateral so that it may be sold to satisfy a portion of the Defendants' outstanding obligations.

## BACKGROUND

I.      **Bank of America Advanced Loans to JB.**

9.      On October 26, 2001, Bank of America made a loan to JB in the original principal amount of $2,400,000.00 (the "2001 Loan").

10.     The 2001 Loan is evidenced, in part, by a Promissory Note dated October 26, 2001 in the original principal amount of $2,400,000.00, as amended (the "2001 Note") executed and

delivered by JB to Bank of America. A true and correct copy of the 2001 Note is attached hereto and incorporated herein as Exhibit A.

11. Further evidencing the 2001 Loan, Bank of America, JB, Hanna and Donna Hanna entered into that certain Term Loan Agreement dated October 26, 2001, as amended (the "2001 Loan Agreement"). A true and correct copy of the 2001 Loan Agreement is attached hereto and incorporated herein as Exhibit B. The 2001 Note, the 2001 Loan Agreement and all instruments, agreements and documents related thereto shall be collectively referred to herein as the "2001 Loan Documents."

12. On September 20, 2005, Bank of America made a second loan to JB in the original principal amount of $11,201,000.00 (the "2005 Loan"). The 2005 Loan and the 2001 Loan shall be collectively referred to herein as the "JB Loans".

13. The 2005 Loan is evidenced, in part, by a Promissory Note dated September 20, 2005 in the original principal amount of $11,201,000.00 (the "2005 Note") executed and delivered by JB to Bank of America. A true and correct copy of the 2005 Note is attached hereto and incorporated herein as Exhibit C.

14. Further evidencing the 2005 Loan, Bank of America, JB and HCC entered into that certain Term Loan Credit Agreement dated September 20, 2005 (the "2005 Loan Agreement"). A true and correct copy of the 2005 Loan Agreement is attached hereto as Exhibit D. The 2005 Note, 2005 Loan Agreement and all instruments, agreements and documents shall be collectively referred to herein as the "2005 Loan Documents".

15. In connection with the JB Loans, JB and Bank of America entered into that certain ISDA Master Agreement dated as of September 10, 1998 and a letter agreement related thereto dated April 10, 2007 (the "JB Swap Agreement"). A true and correct copy of the JB

Swap Agreement is attached hereto and incorporated herein as <u>Exhibit E</u>.  The 2001 Loan Documents, the 2005 Loan Documents and the JB Swap Agreement shall be collectively referred to herein as the "JB Loan Documents."

## II.     Bank of America Advanced a $2,400,000.00 Loan to Kerzen.

16.     Bank of America and Kerzen entered into that certain Loan Agreement dated April 26, 2006, as amended (the "Kerzen Loan Agreement").  A true and correct copy of the Kerzen Loan Agreement is attached hereto as <u>Exhibit F</u>.

17.     Pursuant to the Kerzen Loan Agreement, Bank of America advanced $2,400,000.00 to Kerzen (the "Kerzen Loan" and with the JB Loans, the "Loans").

18.     In connection with the Kerzen Loan, Kerzen and Bank of America also entered into that certain ISDA Master Agreement dated December 6, 2005 (the "Kerzen Swap Agreement").  A true and correct copy of the Kerzen Swap Agreement is attached hereto and incorporated herein as <u>Exhibit G</u>.  The Kerzen Loan Agreement, the Kerzen Swap Agreement, and all the instruments, agreements and documents related thereto shall be collectively referred to as the "Kerzen Loan Documents."  The Kerzen Loan Documents and the JB Loan Documents shall be collectively referred to as the "Loan Documents."

## III.    JB and Kerzen Granted Bank of America a First Priority Security Interest in Certain Assets, Including Mortgages on Certain of Their Real Property.

19.     In order to secure its obligations and liabilities to Bank of America, JB granted Bank of America a mortgage on that certain real property in Washington County, Arkansas commonly known as 1080 Henri de Tonti Boulevard, Springdale, Arkansas, as evidenced in part by that (i) Fee Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated October 26, 2001 duly recorded with the recorder's office in Washington County, Arkansas on November 1, 2001 (the "2001 Mortgage"), and (ii) Modification of Mortgage dated

April 26, 2007 duly recorded with the recorder's office in Washington County, Arkansas on April 24, 2007 (the "Modification"). True and correct copies of the 2001 Mortgage and Modification are attached hereto and incorporated herein as <u>Exhibits H and I</u>, respectively.

20. Further securing its obligations and liabilities to Bank of America, JB granted Bank of America a mortgage on that certain real property commonly known as 2700 Armstrong Avenue, Fayetteville, Arkansas, 632 East 15th Street, Fayetteville, Arkansas and 1080 Henri de Tonti Boulevard, Springdale, Arkansas (the "JB Real Property") as evidenced in part by that (i) Mortgage and Security Agreement dated September 20, 2005 duly recorded with the recorder's office in Washington County, Arkansas at on September 22, 2005 (the "2005 Mortgage"), and (ii) the Modification. A true and correct copy of the 2005 Mortgage is attached hereto and incorporated herein as <u>Exhibit J</u>.

21. Pursuant to the 2005 Mortgage, JB further secured its obligations and liabilities to Bank of America by granting Bank of America a first priority security interest in the rents from the JB Real Property, all equipment, furniture, fixtures, and other articles of personal property owned by JB, located on, or attached or affixed to the JB Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property and all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition thereof (collectively referred to as the "JB Personal Property"). The JB Real Property and the JB Personal Property shall be collectively referred to as the JB Collateral.

22. In order to secure its obligations and liabilities to Bank of America, Kerzen granted Bank of America a mortgage on that certain real property (the "Kerzen Real Property") in Adair County, Oklahoma commonly known as 300 West Industrial Park Road, Westville,

Oklahoma, as evidenced by that Mortgage dated April 26, 2006, duly recorded in the recorder's office for Adair County, Oklahoma at book 0413, page 837 on April 26, 2006 (the "Kerzen Mortgage"). A true and correct copy of the Kerzen Mortgage is attached hereto and incorporated herein as Exhibit K.

23. Pursuant to the Kerzen Mortgage, Kerzen further secured its obligations and liabilities to Bank of America by granting Bank of America a first priority security interest in the rents from the Kerzen Real Property, all equipment, furniture, fixtures, and other articles of personal property owned by Kerzen, located on, or attached or affixed to the Kerzen Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property and all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition thereof (collectively referred to as the "Kerzen Personal Property"). The Kerzen Real Property and the Kerzen Personal Property shall be collectively referred to as the Kerzen Collateral.

### IV. The Guarantors Guaranteed Payment of the Indebtedness Due Under the Loans.

24. To induce Bank of America to provide the 2001 Loan to JB, Hanna entered into that certain Unconditional Guaranty dated October 26, 2001 (the "2001 Hanna Guaranty") in favor of Bank of America. A true and correct copy of the 2001 Hanna Guaranty is attached hereto and incorporated herein as Exhibit L.

25. As more fully set forth in the 2001 Hanna Guaranty, Hanna unconditionally guaranteed payment of, among other things, all obligations and liabilities owing by JB to Bank of America under the 2001 Loan Documents, all related documents, and all attorneys' fees and expenses incurred by Bank of America. (Ex. L (2001 Hanna Guaranty) at ¶¶ 1, 4 and 14).

26. To induce Bank of America to provide the 2005 Loan to JB, Hanna entered into that certain Guaranty Agreement dated September 20, 2005 (the "2005 Hanna Guaranty") in favor of Bank of America. A true and correct copy of the 2005 Hanna Guaranty is attached hereto and incorporated herein as <u>Exhibit M</u>. The 2001 Hanna Guaranty and 2005 Hanna Guaranty shall be collectively referred to as the Hanna Guarantees.

27. As more fully set forth in the 2005 Hanna Guaranty, Hanna unconditionally guaranteed payment of, among other things, all obligations and liabilities owing by JB to Bank of America under the 2005 Loan Documents, all related documents, and all attorneys' fees and expenses incurred by Bank of America. (Ex. M (2005 Hanna Guaranty) at p.1).

28. To induce Bank of America to provide the Kerzen Loan to Kerzen, HCC entered into that certain Continuing and Unconditional Guaranty dated April 26, 2006 (the "HCC Guaranty") in favor of Bank of America. A true and correct copy of the HCC Guaranty is attached hereto and incorporated herein as <u>Exhibit N</u>. Hanna and HCC are collectively referred to herein as the "Guarantors."

29. As more fully set forth in the HCC Guaranty, HCC unconditionally guaranteed payment of, among other things, all obligations and liabilities owing by Kerzen to Bank of America, all related documents, and all attorneys' fees and expenses incurred by Bank of America. (Ex. N (HCC Kerzen Guaranty) at ¶¶ 1 and 23).

**V.  JB and Kerzen Defaulted on the Loans.**

30. Pursuant to the 2005 Loan Documents, JB agreed to pay the outstanding indebtedness on the 2005 Note upon its maturity on September 20, 2010. (Ex. C (2005 Note) at p.2).

31.     A default under the 2005 Note constitutes an event of default under the 2001 Loan Agreement, the Kerzen Loan Agreement, the JB Swap Agreement and the Kerzen Swap Agreement. (Ex. D (2005 Loan Agreement) ¶ 15.2 and Ex. F (Kerzen Loan Agreement) ¶ 9.2).

32.     In the event that JB failed to pay any amount of principal or interest when due under the 2005 Note, interest on the unpaid principal balances owed by JB and Kerzen will accrue at (i) the Rate after Maturity specified in the 2005 Loan Agreement which is the lesser of 15% or the maximum rate provided by law, (ii) the Default Rate specified in the 2001 Loan Agreement which is the lesser of 10% or the maximum rate provided by law, and (iii) the Default Rate specified in the Kerzen Loan Agreement which is LIBOR + 7.35%.

33.     Moreover, pursuant to Section 15.3.2 of the 2005 Loan Agreement, Bank of America may, at its option, upon the occurrence of an Event of Default, declare all obligations owed by JB and Kerzen under the Loan Documents to be immediately due and payable.

34.     Further, under Section 15.3.7 of the 2005 Loan Agreement, upon an event of default, Bank of America is entitled to "exercise any or all of its rights…as a mortgagee and as a secured party under the UCC and any other applicable Law" and "sell or otherwise dispose of the [JB Collateral] at a public or private sale in a commercially reasonable manner…". (Ex. D (2005 Loan Agreement) ¶ 15.3.7).

35.     Under Section 9 of the Kerzen Loan Agreement, Bank of America, upon an event of default, shall have "all rights and remedies available at law or in equity." (Ex. F (Kerzen Loan Agreement) ¶ 9).

36.     Moreover, the 2001 Mortgage, 2005 Mortgage and Kerzen Mortgage provide that upon the occurrence of an event of default, Bank of America shall have the right to have a receiver appointed to take possession of all or any part of the JB Collateral or Kerzen Collateral,

respectively. (Ex. H (2001 Mortgage) ¶ 6.2.9, Ex. J (2005 Mortgage) p.7 and Ex. K (Kerzen Mortgage) p.10).

37. On September 20, 2010, the 2005 Note matured, and all indebtedness outstanding under the 2005 Note was due and payable in full by JB. (Ex. C (2005 Note) at p.2).

38. JB defaulted, however, by failing to make such payment.

39. Consequently, as provided in the Loan Documents, JB's default under the JB Loan Documents constitutes a default by Kerzen under the Kerzen Loan Documents.

40. By letter dated October 13, 2010 (the "Acceleration Notice"), Bank of America notified JB, Kerzen and the Guarantors that JB and Kerzen were in default under the Loan Documents, and as permitted under the JB Loan Agreements and Kerzen Loan Agreement, Bank of America accelerated all of JB and Kerzen's obligations under the Loan Documents making them immediately due and payable. A true and correct copy of the Acceleration Notice is attached hereto and incorporated herein as Exhibit O.

41. JB and Kerzen have failed to pay their obligations under the Loan Documents.

42. As of October 13, 2010, JB owed unpaid principal on the 2001 Loan and 2005 Loan totaling $1,145,748.01 and $7,401,003.83, respectively, exclusive of interest, obligations under the JB Swap Agreement, costs, expenses and fees. Interest on the unpaid principal balance owed by JB on the JB Loans continues to accrue at (i) the Rate after Maturity specified in the 2005 Loan Agreement which is the lesser of 15% or the maximum rate provided by law, and (ii) the Default Rate specified in the 2001 Loan Agreement which is the lesser of 10% or the maximum rate provided by law.

43. Furthermore, as of October 13, 2010, Kerzen owed unpaid principal on the Kerzen Loan totaling $1,914,705.30, exclusive of interest, obligations under the Kerzen Swap

Agreement, costs, expenses and fees. Interest on the unpaid principal balance owed by Kerzen continues to accrue at the Default Rate specified in the Kerzen Loan Agreement which is LIBOR + 7.35%.

44. Bank of America has fulfilled all of its obligations under the Loan Documents.

## COUNT I – BREACH OF CONTRACT
(JB)

45. Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

46. For good and sufficient consideration, Bank of America and JB entered into the JB Loan Documents, pursuant to which Bank of America provided the JB Loans to JB.

47. JB breached the JB Loan Documents by, among other things, failing to pay the 2005 Note upon its maturity on September 20, 2010 and failing to pay the JB Loans in full after acceleration.

48. As a result of such breach, Bank of America has suffered damages in the amount of the unpaid principal and interest plus obligations under the JB Swap Agreement. Bank of America has further been damaged by JB's breach in that Bank of America has incurred reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

## COUNT II—FORECLOSURE OF RENTS FROM JB REAL PROPERTY
(JB)

49. Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

50. Bank of America seeks to foreclose on the security interest in the rents from the JB Real Property.

51.     Pursuant to the 2001 Loan Agreement, 2005 Loan Agreement, 2001 Mortgage and 2005 Mortgage, JB granted Bank of America a security interest in the rents on the JB Real Property to secure its obligations under the JB Loan Documents.

52.     Bank of America properly recorded its security interest in the rents pursuant to the 2001 Mortgage and the 2005 Mortgage.

53.     JB has defaulted on its obligations and liabilities under the JB Loan Documents by failing to pay the outstanding indebtedness due.

54.     Bank of America does not offer to accept the rents from the JB Real Property in full satisfaction of all obligations due under the JB Loan Documents.

## COUNT III—TURNOVER
### (JB)

55.     Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

56.     As a result of JB's breach of the JB Loan Documents, events of default under Section 7 of the 2001 Loan Agreement and Section 15 of the 2005 Loan Agreement have occurred.

57.     Consequently, pursuant to Section 15.3.6 of the 2005 Loan Agreement, Bank of America is entitled, at its request, to have JB, at its own expense, "assemble the [JB Collateral] and make it available to Lender…".

58.     Under Section 15.3.7.2 of the 2005 Loan Agreement, Bank of America is entitled to "sell or otherwise dispose of [the JB Collateral] at public or private sale in a commercially reasonable manner…".

59. Moreover, under the 2001 Mortgage and 2005 Mortgage, Bank of America shall have the right to have a receiver appointed to take possession of all or any part of the JB Collateral.

## COUNT IV—BREACH OF CONTRACT
(Kerzen)

60. Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

61. For good and sufficient consideration, Bank of America and Kerzen entered into the Kerzen Loan Documents, pursuant to which Bank of America provided the Kerzen Loan to Kerzen.

62. Kerzen breached the Kerzen Loan Documents by, among other things, JB's failure to pay the 2005 Note upon its maturity on September 20, 2010 and failing to pay the Kerzen Loan in full after acceleration

63. As a direct and proximate result of Kerzen's breach, Bank of America has suffered damages in the amount of the unpaid principal and accrued interest plus obligations under the Kerzen Swap Agreement. Bank of America has further been damaged by Kerzen's breach in that Bank of America has incurred reasonable costs and expenses, including attorney fees, in attempting to collect payment.

## COUNT V – FORECLOSURE OF RENTS FROM KERZEN REAL PROPERTY
(Kerzen)

64. Bank of America realleges and incorporates by reference herein the allegations of paragraphs 1 through 44, as if fully set forth herein.

65. Bank of America seeks to foreclose on its security interest in the rents from the Kerzen Real Property.

66. Pursuant to the Kerzen Mortgage, Kerzen granted Bank of America a security interest in the rents on the Kerzen Real Property to secure its obligations under the Kerzen Loan Documents.

67. Bank of America properly recorded its security interest in the rents pursuant to the Kerzen Mortgage..

68. Kerzen has defaulted on its obligations and liabilities under the Kerzen Loan Documents by failing to pay the outstanding indebtedness due.

69. Bank of America does not offer to accept the rents on the Kerzen Real Property in full satisfaction of all obligations due under the Kerzen Loan Documents.

### COUNT VI – TURNOVER
(Kerzen)

70. Bank of America realleges and incorporates by reference herein the allegations of paragraphs 1 through 44, as if fully set forth herein.

71. As a result of JB's breach of the JB Loan Documents, events of default under Section 9 of the Kerzen Loan Agreement have occurred.

72. Consequently, pursuant to Section 9 of the Kerzen Loan Agreement, Bank of America has "all rights and remedies available at law or in equity."

73. Moreover, under the Kerzen Mortgage, Bank of America shall have the right to have a receiver appointed to take possession of all or any part of the Kerzen Collateral.

### COUNT VII – BREACH OF GUARANTY
(Hanna)

74. Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

75. For good and sufficient consideration, Hanna issued the Hanna Guarantees in favor of Bank of America.

76. Bank of America has made demand upon Hanna to satisfy his obligations under the Hanna Guarantees.

77. Hanna has materially breached his obligations under the Hanna Guarantees by failing to pay to Bank of America the amount owing under the Hanna Guarantees.

78. As a result of such breach, Bank of America has suffered damages in the amount of the unpaid principal and interest due under the JB Loans plus obligations under the JB Swap Agreement, accrued interest, costs, fees, and expenses, including, without limitation, attorneys' fees and expenses.

## COUNT VIII – BREACH OF GUARANTY
(HCC)

79. Bank of America restates and incorporates paragraphs 1 through 44, as if fully set forth herein.

80. For good and sufficient consideration, HCC issued the HCC Guaranty in favor of Bank of America.

81. Bank of America has made demand upon HCC to satisfy its obligations under the HCC Guaranty.

82. HCC has materially breached its obligations under the HCC Guaranty by failing to pay to Bank of America the amount owing under the HCC Guaranty.

83. As a result of such breach, Bank of America has suffered damages in the amount of unpaid principal and interest due under the Kerzen Loan plus obligations under the Kerzen Swap Agreement, accrued interest, costs, fees, and expenses, including, without limitation, attorneys' fees and expenses.

**WHEREFORE**, Plaintiff Bank of America, N.A., respectfully requests this Court to:

(a) enter judgment in favor of Bank of America holding Defendant JB liable as a borrower under the JB Loan Documents for the principal amounts of $1,145,748.01 and $7,401,003.83 due under the 2001 Loan and 2005 Loan, respectively, plus accrued interest, obligations under the JB Swap Agreement, and costs, expenses and fees incurred by Bank of America;

(b) enter judgment of foreclosure and sale directing that the rents from the JB Real Property be foreclosed upon to partially satisfy the indebtedness due under the JB Loan Documents, and enter judgment for any deficiency in favor of Bank of America and against JB;

(c) enter an order requiring JB to assemble the JB Collateral and to turnover to Bank of America or a receiver designated by Bank of America so that the JB Collateral may be sold and the proceeds distributed pursuant to the terms of the JB Loan Documents;

(d) enter judgment in favor of Bank of America holding Defendant Kerzen liable as a borrower under the Kerzen Loan Documents for the principal amount of $1,914,705.30 plus accrued interest, obligations under the Kerzen Swap Agreement, and costs, expenses and fees incurred by Bank of America;

(e) enter judgment of foreclosure and sale directing that the rents on the Kerzen Real Property be foreclosed upon to partially satisfy the indebtedness due under the Kerzen Loan Documents, and enter judgment for any deficiency in favor of Bank of America and against Kerzen;

(f) enter an order requiring Kerzen to assemble the Kerzen Collateral and to turnover to Bank of America or a receiver designated by Bank of America so that the Kerzen Collateral may be sold and the proceeds distributed pursuant to the terms of the Kerzen Loan Documents;

(g) enter judgment in favor of Bank of America and against Hanna as a guarantor under the JB Loan Documents for the principal amounts of $1,145,748.01 and $7,401,003.83 due under the 2001 Loan and 2005 Loan, respectively, plus accrued interest, obligations under the JB Swap Agreement, and costs, expenses and fees incurred by Bank of America;

(h) enter judgment in favor of Bank of America and against HCC as a guarantor under the Kerzen Loan Documents for the principal amount of $1,914,705.30 due under the Kerzen Loan, plus accrued interest, obligations under the Kerzen Swap Agreement, and costs, expenses and fees incurred by Bank of America; and

(i) grant Bank of America such other and further relief as the Court may deem just and appropriate.

Dated: November 9, 2010

Respectfully submitted,

BANK OF AMERICA, N.A.

By: *Lance R Miller*
Lance R. Miller   85-109

Michael L. Molinaro (ARDC No.: 6183321)
Melissa A. Mickey (ARDC No.: 6290226)
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111

-and-
Lance R. Miller (Ark. Bar No. 85109)
Stan D. Smith (Ark. Bar No. 90117)
MITCHELL, WILLIAMS, SELIG, GATES
& WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 918-7830

*Counsel for Plaintiff Bank of America, N.A.*